UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LEACHCO, INC.**, <br><br>　　　　Plaintiff, <br><br>*v.* <br><br>**CONSUMER PRODUCT SAFETY COMMISSION**, **ET AL.**, <br><br>　　　　Defendants. | Case No. 6:22-CV-00232-RAW |

# LEACHCO, INC.'s
## MOTION FOR INJUNCTION PENDING APPEAL
## AND BRIEF IN SUPPORT

Plaintiff Leachco, Inc., pursuant to Fed. R. Civ. P. 62(d), respectfully moves for an injunction, pending interlocutory appeal, to preclude the unconstitutionally structured Consumer Product Safety Commission from continuing its administrative enforcement action, *In the Matter of Leachco, Inc.*, CPSC Docket No. 22-1.[1]

## INTRODUCTION

The Supreme Court's recent unanimous decision in *Axon Enterprise, Inc. v. FTC*, confirms three things: (1) Leachco, Inc., by "being subjected to unconstitutional agency authority," is suffering irreparable harm; (2) Leachco properly sued in federal court to challenge the Commission's unconstitutional authority; and (3) unless the Commission's administrative proceeding against Leachco is enjoined, not only will Leachco's irreparable harm continue, but also, Leachco will be forever barred from seeking "meaningful" judicial review of its constitutional claims. 143 S.Ct. 890, 903–04 (2023) (cleaned up).

Leachco, like the challengers in *Axon*, is being subjected to an enforcement proceeding by an agency with structural, separation-of-powers defects. These defects deprive the agency of authority to proceed against Leachco "at all." *Id.* at 904. As long

---

[1] Pursuant to LCvR 7.1(f), Leachco's counsel advises the Court that counsel for the parties met and conferred in good faith by telephone—Leachco's counsel is located in Florida; CPSC's counsel is located in Washington D.C.—but were unable to reach an accord.

as the Commission's proceeding continues, so does Leachco's irreparable harm. This alone warrants an injunction.

But injunctive relief is even more critical here: If the Commission's proceeding ends, Leachco's injury—"being subjected to unconstitutional agency authority"—also ends. *Axon*, 143 S.Ct. at 903. At that point, Leachco's injury would be "impossible to remedy" because a "proceeding that has already happened cannot be undone." *Id*. at 903, 904. An injunction is therefore necessary to allow Leachco to pursue "meaningful" judicial review of its constitutional challenges before it's "too late." *Id*. at 904.

## BACKGROUND

The Commission is an executive agency armed with broad enforcement and regulatory authority. Ex. 1, Verified Compl. (Compl.), ¶¶ 83–98. It is headed by five Commissioners, each of whom is appointed to a seven-year term by the President with the advice and consent of the Senate. 15 U.S.C. § 2053(a), (b)(1). The Commissioners are principal executive officers of the United States, but the President cannot remove them from office except for "neglect of duty or malfeasance in office but for no other cause." *Id*. § 2053(a).

Leachco is a small, family-owned business in Ada, Oklahoma, founded in 1988 by Jamie Leach and her husband Clyde. Ex. 1, ¶ 12. Leachco designs and makes, among other things, an infant lounger called the Podster. *Id*. ¶¶ 14–28. Over 180,000 Podsters have been sold and, tragically, three infants died because of consumer misuse.[2] The Commission nonetheless claims that the Podster itself is a hazard and seeks a recall through its in-house administrative proceeding. *Id*. ¶¶ 29–33.

To oversee its proceeding, the Commission appointed Administrative Law Judge Michael G. Young as "Presiding Officer." Ex. 1, ¶ 135. ALJ Young is an executive officer of the United States, but he may not be removed from office except "for good cause established and determined by the Merit Systems Protection Board"

---

[2] For example, one infant (who happened to have been placed in a Podster) died after personnel at a daycare put him in a crib with a bottle in his mouth and left him unattended for an hour-and-a-half. Ex. 1, ¶ 48.

following "[a]n action" brought by "the agency in which the administrative law judge is employed." 5 U.S.C. § 7521(a). Those with the power to remove ALJ Young likewise may not be removed except for cause. 5 U.S.C. § 1202(d); 15 U.S.C. § 2053(a); 30 U.S.C. § 823(b). *See* Ex. 1, ¶¶ 132–157.

Leachco sued to challenge these removal protections. Leachco alleges that the removal protections render the Commission unconstitutionally structured, in violation of separation-of-powers principles, such that its ongoing enforcement proceeding inflicts upon Leachco an irreparable injury.

Before the Supreme Court decided *Axon*, this Court denied Leachco's requests for injunctive relief on the ground that a separation-of-powers violation does not establish irreparable harm. *See* Ex. 2, Nov. 29, 2022 Order, p. 5. The Court then stayed its proceedings pending Leachco's appeal. *See* Exs. 3 & 4. A motions panel of the Tenth Circuit denied without analysis Leachco's alternative request for an injunction pending appeal or expedited briefing and consideration. *See* Ex. 5. Merits briefing at the Tenth Circuit is complete, but oral argument has not been scheduled.

After *Axon* was issued, Leachco again moved the Tenth Circuit for an injunction pending appeal. In response, the Commission conceded (1) Leachco properly alleged an injury in this case and (2) this Court's categorical view, that a separation-of-powers violation does not establish irreparable harm, is "in tension" with *Axon*. *See* CPSC May 19, 2023 Opp., p. 10. A Tenth Circuit panel denied Leachco's motion without prejudice because Leachco did not first ask this Court. *See* Ex. 6.

In the meantime, the Commission's in-house action against Leachco continues apace. Fact discovery concluded March 20, 2023; expert discovery closed April 28, 2023; dispositive motions were filed June 9, 2023 (responses due June 23); pre-hearing filings are due over the next several weeks; and the administrative hearing is set to begin August 7, 2023. *See* Ex. 7.

## STANDARD OF REVIEW

A plaintiff is entitled to a preliminary injunction when (1) it is likely to suffer irreparable harm without preliminary relief; (2) it is likely to succeed on the merits; and (3) the balance of equities tips in its favor and the injunction is in the public

interest. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013) (en banc), *aff'd sub nom*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors support the requested injunction here. Leachco discusses the irreparable-harm factor first to explain the import of the *Axon* decision.

## ARGUMENT

### I. *AXON* CONFIRMS THAT LEACHCO IS SUFFERING AN IRREPARABLE HARM THAT WILL CONTINUE WITHOUT AN INJUNCTION

In *Axon* (like here), parties subject to agency enforcement proceedings filed collateral lawsuits in federal court to challenge the agencies' unconstitutional structures. 143 S.Ct. at 897, 903–04. The Supreme Court held that district courts have jurisdiction to hear these types of challenges *precisely because* the injury—being subjected to an unconstitutional proceeding—is "impossible to remedy once the proceeding is over." *Id*. at 903. Accordingly, while past injury "cannot be undone," future injury can be prevented—unless an agency proceeding ends—at which point, it's "too late." *Id*. at 904.

Leachco faces the same situation here—it suffers an ongoing irreparable injury that "cannot be undone" once the CPSC's proceeding ends. *Axon*, 143 S.Ct. at 904. And Leachco's case has "more than a passing resemblance" to *Axon*. *Id*. at 901. Just as in *Axon*:

- Leachco is a respondent "in an administrative enforcement action" and Leachco "challenges the constitutional authority of the agency to proceed." *Axon*, 143 S.Ct. at 897.[3]

- Leachco alleges that the agency's ALJ is "insufficiently accountable to the President, in violation of separation-of-powers principles." *Axon*, 143 S.Ct. at 897.[4] (Leachco also alleges that the CPSC Commissioners are themselves insufficiently accountable to the President, in violation of separation-of-powers principles.[5])

---

[3] *See* Ex. 1, Compl., pp. 1–2, ¶¶ 29–33.

[4] *See id*. ¶¶ 100–104, 132–157.

[5] *See id*. ¶¶ 70–81, 120–131.

- Leachco's separation-of-powers challenges are "fundamental, even existential." *Axon*, 143 S.Ct. at 897.

- Leachco "sued in district court prior to an ALJ decision, seeking to enjoin the Commission's proceeding" because, Leachco alleges, "fundamental aspect[s] of the Commission's structure violate[] the Constitution," and these violations render "the entire [administrative] proceeding unlawful." *Axon*, 143 S.Ct. at 898.[6]

- Leachco's challenges are "not to any specific substantive decision" of the CPSC but are "instead challenges . . . to the structure or very existence of an agency: [Leachco] charge[s] that [the CPSC] is wielding authority unconstitutionally in all . . . of its work." *Axon*, 143 S.Ct. at 902.[7]

- Leachco thus alleges that the Commission should not proceed "at all." *Axon*, 143 S.Ct. at 904.

- Leachco claims that it is harmed by "being subjected to unconstitutional agency authority"—a harm that is inflicted "irrespective of [the administrative proceeding's] outcome, or of other decisions made within it." *Axon*, 143 S.Ct. at 903, 904 (cleaned up).[8]

- Leachco's separation-of-powers injury—"being subjected to unconstitutional agency authority"—"is 'a here-and-now injury.'" *Axon*, 143 S.Ct. at 903 (quoting *Seila Law LLC v. CFPB*, 140 S.Ct. 2183, 2196 (2020)).[9]

- Leachco's injury "is impossible to remedy once the [CPSC's] proceeding is over." *Axon*, 143 S.Ct. at 903.[10]

- Leachco thus asks this Court "to enjoin the [CPSC] from subjecting it to the Commission's unfair and unconstitutional internal forum." *Axon*, 143 S.Ct. at 899 (cleaned up).[11]

Leachco's here-and-now injury thus mirrors what *Axon* recognizes as *fundamental* and *irreparable* harm. *Axon*, 143 S.Ct. at 903; *see also Seila Law*, 140 S.Ct. at 2196 (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)). Leachco's injury is

---

[6] *See id.* pp. 1–2, ¶¶ 1, 109–119, Request for Relief.

[7] *See id.* pp. 1–2, ¶¶ 1, 109–119.

[8] *See id.*

[9] *See id.*

[10] *See id.*

[11] *See id.* pp. 1–2, Request for Relief.

fundamental because it arises from the constitutionally defective "structure or very existence" of the Commission, which is thus precluded from acting against Leachco "at all." *Axon*, 143 S.Ct. at 902, 904.

And Leachco's constitutional injury is irreparable because it "is impossible to remedy." *Axon*, 143 S.Ct. at 903. As the Tenth Circuit holds, "well-settled law supports the constitutional-violation-as-irreparable-injury principle." *Free the Nipple v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019) (citations omitted). And *Axon* confirms that being subjected to an unconstitutional agency's proceeding constitutes just such an injury. 143 S.Ct. at 903.[12]

Further, once the Commission's proceeding ends, Leachco's injury "cannot be undone," and Leachco is forever barred from even asking for meaningful judicial review. As *Axon* confirmed, delayed judicial review does not—indeed, cannot—remedy Leachco's injury, because post-proceeding judicial review comes too late:

> Suppose a court [ ] agrees with [Leachco], on review of an adverse [CPSC] decision, that [CPSC- and] ALJ-led proceedings violate the separation of powers. The court could of course vacate the [CPSC's] order. But [Leachco's] separation-of-powers claim is not about that order; indeed, [Leachco] would have the same claim had it *won* before the agency. The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court [ ] can do nothing: A proceeding that has already happened cannot be undone. Judicial review of [Leachco's] structural constitutional claims would come too late to be meaningful.

*Axon*, 143 S.Ct. at 903–04.[13]

---

[12] When Leachco first moved this Court for a preliminary injunction, the Commission erroneously argued that a split decision from the Tenth Circuit (*Aposhian v. Barr*, 958 F.3d 969 (10th Cir. 2020)) qualified *Free the Nipple*'s categorical rule. This was error. But the issue is now moot, since *Axon* confirms that being subjected to an unconstitutionally structured agency's proceeding is an irreparable harm. In the latest round of briefing at the Tenth Circuit, the Commission did not cite *Aposhian*.

[13] *See also Cochran v. SEC*, 20 F.4th 194, 208 n.12 (5th Cir. 2022) (en banc) (Cochran "asserts that she will be harmed by the very act of having to appear in proceedings before an ALJ who is unconstitutionally insulated from the President's removal power. Therefore, if the SEC were to decide Cochran's case in her favor on other

*Axon* thus makes clear that if Leachco remains subject to the Commission's unlawful proceeding, its irreparable harm will continue. *See id.*, 143 S.Ct. at 903 (quoting *Seila Law*, 140 S.Ct. at 2196). And, even in the unlikely event that Leachco's constitutional challenges could be resolved in court before the CPSC proceeding ends, Leachco will have, in the meantime, continued to suffer that irreparable harm.

Ultimately, though, it is all but certain that the CPSC's proceeding will end before any court hears Leachco's constitutional claims. Leachco's appeal involves only the preliminary-injunction order issued by this Court, which also stayed its proceedings pending appeal. Therefore, no court will resolve the merits of Leachco's constitutional claims until after the Commission's administrative proceeding. And a "proceeding that has already happened cannot be undone." *Axon*, 143 S.Ct. at 904.

In short, without an injunction, Leachco will continue to suffer the irreparable harm of being subjected to an unconstitutional proceeding. Once that proceeding ends "[j]udicial review" will "come too late to be meaningful" because Leachco's harm will then be "impossible to remedy." *Axon*, 143 S.Ct. at 903–04.

## II. LEACHCO IS LIKELY TO SUCCEED ON THE MERITS

Supreme Court precedents show that Leachco is likely to succeed on its claims that **(A)** CPSC Commissioners, principal officers who wield substantial executive power, are unconstitutionally protected against Presidential removal, *see Seila Law*, 140 S.Ct. at 2183; and **(B)** the ALJ conducting the proceeding against Leachco enjoys unconstitutional multi-level removal protection, *see Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484 (2010). As such, the Commission is proceeding against Leachco unlawfully.

### A. The CPSC Commissioners are unconstitutionally protected from Presidential removal

The President holds "unrestricted" removal power, subject to only two narrow exceptions:

---

grounds, it would be denying her any opportunity for meaningful judicial review of her alleged source of harm."), *aff'd sub nom.*, *Axon*, 143 S.Ct. 890.

(1) an exception for inferior officers with limited duties and no policy-making or administrative authority, *Seila Law*, 140 S.Ct. at 2199–2200; and

(2) an exception for principal officers who do not exercise any executive power, *id.* 2198–99 (discussing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)).

The Commission has never disputed that its Commissioners are (1) principal officers (2) who wield significant executive power. *See* Ex. 1, Compl., ¶¶ 70–108, 120–131. Thus, neither removal exception applies, and the Commissioners' for-cause removal protection (15 U.S.C. § 2053(a)) is unconstitutional.

The Commission has claimed that § 2053(a) is valid under *Humphrey's Executor*. But *Humphrey's Executor* involved an agency (the 1935 Federal Trade Commission) that was "said not to exercise *any* executive power." *Seila Law*, 140 S.Ct. at 2199 (emphasis added). There, the Supreme Court considered a removal protection for officers whose duties were "neither political nor executive, but predominantly quasi judicial and quasi legislative." *Humphrey's Executor*, 295 U.S. at 624. The agency "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid." *Id.* at 628. "Such a body," the Supreme Court said, "cannot in any proper sense be characterized as an arm or an eye of the executive." *Id.*

*Humphrey's Executor* thus easily distinguished *Myers v. U.S.*, 272 U.S. 52 (1926), which upheld the President's power to remove a postmaster because, unlike a 1935 FTC Commissioner, a postmaster was "an executive officer restricted to the performance of executive functions. He [wa]s charged with no duty at all related to either the legislative or judicial power." *Humphrey's Executor*, 295 U.S. at 627. Accordingly, *Humphrey's Executor* explained, the President's unrestricted removal power recognized in *Myers* applies to "all purely executive officers." 295 U.S. at 628.

Indeed, as the Supreme Court recently held, "*Humphrey's Executor* re-affirmed the core holding of *Myers*, that the President has 'unrestrictable power . . . to remove *purely executive* officers'"—like the CPSC Commissioners here. *Seila Law*, 140 S. Ct. at 2199 (quoting *Humphrey's Executor*, 295 U.S. at 632) (emphasis added); *see id.* at

2199–2207 (confirming that heads of agencies wielding substantial executive power must be removable at will by the President).

In sum, the CPSC's Commissioners are (1) principal (not inferior) officers (2) who exercise substantial, "quintessentially executive power [that was] not considered in *Humphrey's Executor*." *Seila Law*, 140 S.Ct. at 2200. Accordingly, Leachco is likely to succeed on its claim that the for-cause removal protection for CPSC Commissioners is unconstitutional.

### B. The ALJ is unconstitutionally protected from removal

Here, the Commission has never disputed the relevant facts: ALJ Young is an inferior executive officer; he exercises significant authority on behalf of the United States; he may not be removed from office except for cause; and those with authority to remove him may not themselves be removed (by the President) except for cause. *See* Ex. 1, Compl., ¶¶ 100–108, 132–157. Thus, ALJ Young enjoys multi-level removal protection, "contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 484.

The Commission will try to brush aside *Free Enterprise Fund* because the Supreme Court there did not expressly invalidate multi-level removal protections for administrative law judges. But the Commission's argument "still conflicts with *Free Enterprise Fund*'s reasoning," *Axon*, 143 S.Ct. at 905, and with the reasoning of more recent Supreme Court precedent. *Cf., e.g.*, *Collins v. Yellen*, 141 S.Ct. 1761, 1783 (2021) (finding *Seila Law* "all but dispositive" on the removal-protection issue). These precedents demonstrate that ALJ Young may not be protected by multiple levels of for-cause removal protection.

First, *Free Enterprise Fund* squarely held that multi-level tenure protection for inferior executive officers violates the Constitution. 561 U.S. at 484, 486–87. The Court acknowledged (in a footnote) that it did not consider ALJ removal protections because it "[wa]s disputed" whether ALJs were "necessarily 'Officers of the United States.'" *Id*. at 507 n.10. No longer. In *Lucia v. SEC*, the Supreme Court held that ALJs of the SEC are inferior officers of the United States. 138 S.Ct. 2044, 2053–54

(2018). Here, there is no dispute that ALJ Young exercises substantially the same powers as ALJs in the SEC. Therefore, ALJ Young's status as an ALJ does not remove him from the holding of *Free Enterprise Fund*.

Further, ALJ Young's adjudicative role does not alter the analysis. As the Supreme Court recently held, administrative patent judges, even though they perform adjudicative functions, are executive officers of the United States. *See United States v. Arthrex*, 141 S.Ct. 1970, 1982 (2021) (Executive-branch actions "are exercises of—indeed under our constitutional structure they *must* be exercises of—the 'executive Power.'") (cleaned up).

In sum, *Free Enterprise Fund*, *Seila Law*, and *Arthrex* establish that the CPSC's ALJ—an inferior executive officer wielding significant authority on behalf of the United States—may not enjoy multi-level removal protection. Leachco is thus likely to succeed on its claim that ALJ Young enjoys unconstitutional multi-level removal protection.

### III. THE PUBLIC INTEREST AND THE BALANCE OF THE EQUITIES WEIGH IN FAVOR OF LEACHCO

The last two injunction factors—balancing the equities and the public interest—merge when the government is the defendant. *Nken*, 556 U.S. at 435. These factors support Leachco.

Here, the "public interest will perforce be served by enjoining the enforcement of the invalid provisions of [] law." *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) (citation omitted). It is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple*, 916 F.3d at 807; *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (finding public interest always supports enforcing Constitution). Indeed, "[w]hen a constitutional right hangs in the balance," "even a temporary loss usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806 (citing Wright & Miller § 2948.2 & n.10).

While the Commission has claimed that an injunction would harm its ability to protect consumers, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 141 S.Ct. 2485, 2490 (2021).

And the government "does not have an interest in enforcing a law that is likely" invalid. *Edmondson*, 594 F.3d at 771. *See NFIB v. OSHA*, 142 S.Ct. 661, 666 (2022) (ruling that when a rule exceeds an agency's authority, the court should not "weigh [] tradeoffs" between its intended effect and harms). "When a law is likely unconstitutional, the interests of those the government represents, such as voters, do not outweigh a plaintiff's interest in having its constitutional rights protected." *Hobby Lobby*, 723 F.3d at 1145 (cleaned up).

The Commission's own inaction undercuts any purported interest in consumer protection. While the Commission claims that Leachco's Podster presents a "substantial product hazard," 15 U.S.C. § 2064(a)(2),[14] it did not pursue a recall until 2022—seven years after the first (supposedly related) injury. Further, the Commission has always had the authority to ask a federal court for an injunction to seize or prevent distribution of the Podster. *See id.* §§ 2061, 2064(g). But it has never done so. The Commission's (asserted) interest thus "pales in comparison" to Leachco's constitutional rights. *Newland v. Sebelius*, 881 F. Supp. 2d 1287, 1295 (D. Colo. 2012), *aff'd*, 542 F. App'x 706 (10th Cir. 2013).

Further, only an injunction will allow Leachco to pursue its constitutional challenges before it's "too late" to obtain "meaningful" judicial relief. *Axon*, 143 S.Ct. at 904. Allowing Leachco to do so would, in turn, further the Supreme Court's marked interest in "creat[ing] incentives" for parties "to raise" structural constitutional challenges. *Lucia*, 138 S.Ct. at 2055 n.5 (citing *Ryder v. United States*, 515 U.S. 177, 183 (1995)).

Finally, an injunction here would follow a long line of orders enjoining separation-of-powers violations to prevent irreparable harm. For example, in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), the Supreme Court affirmed an

---

[14] Leachco rejects this claim because, as noted above, the alleged harms were caused not by the Podster itself, but by consumer misuse. But even under the Commission's theory, and assuming that each Podster is used only one time, the chances of injury are exceedingly remote: three injuries allegedly associated with 180,000 Podsters amounts to only 0.0017%—that is, less than two-one-thousandths of a percent. And because each Podster is used dozens of times, the chance of harm is virtually zero.

order enjoining President Truman's unilateral seizure of steel mills. *See also Sierra Club v. Trump*, 963 F.3d 874, 887 (9th Cir. 2020) (affirming preliminary injunction to preserve claim based on Appropriations Clause, "'a bulwark of the Constitution's separation of powers'"), *vacated and remanded on other grounds*, 142 S.Ct. 46 (2021); *Colorado v. Dep't of Just.*, 455 F.Supp.3d 1034, 1047–61 (D. Colo. 2020) (granting injunction for violations of Separation of Powers, Spending Clause, Tenth Amendment, and APA); *City of Evanston v. Barr*, 412 F.Supp.3d 873, 886 (N.D. Ill. 2019) (same).

The *Axon* litigation itself supports an injunction here. In the two underlying challenges to agency proceedings there, both the Fifth and Ninth Circuits stayed administrative proceedings pending appeal. *See* Exs. 8 & 9. Further, after the Supreme Court remanded Axon Enterprise's challenge, the district court issued a 60-day stay of the administrative enforcement proceeding. *See* Ex. 10. Then, in that administrative proceeding, the FTC filed an Unopposed Motion to Withdraw This Matter from (Administrative) Adjudication. *Id*.

In short, as then–Judge Kavanaugh stated, "[t]he public interest is not served by letting an unconstitutionally structured agency continue to operate until the constitutional flaw is fixed. And in this circumstance, the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1137 (D.C. Cir. 2017) (Kavanaugh, J., dissenting).

## CONCLUSION

*Axon* removes all doubt that Leachco, by being subjected to a proceeding carried out by an unconstitutionally structured agency, suffers an irreparable constitutional injury. 143 S.Ct. at 903. Leachco has suffered this irreparable harm since the Commission began its enforcement proceeding in February 2022. And although Leachco is precluded from obtaining any remedy for that harm, an order enjoining the Commission's proceeding will put a stop to that ongoing harm. More importantly, an injunction would ensure that Leachco can raise its constitutional challenges in court before the Commission's proceeding ends. Otherwise, "[j]udicial review" of

Leachco's claims would "come too late to be meaningful" because Leachco's harm would then be "impossible to remedy." *Axon*, 143 S.Ct. at 903–04.

Accordingly, this Court should issue an order enjoining the Commission's administrative enforcement action against Leachco (*In the Matter of Leachco*, CPSC Docket No. 22-1) pending appeal.

DATED: June 13, 2023.                    Respectfully submitted,

| | |
|---|---|
| KURT M. RUPERT | */s/ Oliver J. Dunford* |
| Hartzog Conger Cason | OLIVER J. DUNFORD |
| 201 Robert S. Kerr Ave. | Pacific Legal Foundation |
| Suite 1600 | 4440 PGA Blvd., Suite 307 |
| Oklahoma City, OK 73102 | Palm Beach Gardens, FL 33410 |
| 405.235.7000 | 916.503.9060 |
| krupert@hartzoglaw.com | odunford@pacificlegal.org |
| | |
| | JOHN F. KERKHOFF |
| | FRANK D. GARRISON |
| | Pacific Legal Foundation |
| | 3100 Clarendon Blvd., Suite 1000 |
| | Arlington, VA 22201 |
| | 202.888.6881 |
| | jkerkhoff@pacificlegal.org |
| | fgarrison@pacificlegal.org |

*Attorneys for Plaintiff Leachco, Inc.*

## CERTIFICATE OF SERVICE

  I hereby certify that on June 13, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Madeline M. McMahon
U.S. Department of Justice, Civil Division
1100 L St. NW
Washington, DC 20005
madeline.m.mcmahon@usdoj.gov

Joshua M. Salzman
U.S. Department of Justice
Appellate Staff, Civil Division, Room 7266
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
joshua.m.salzman@usdoj.gov

  *Attorneys for Defendants*

            */s/ Oliver J. Dunford*
            OLIVER J. DUNFORD
            *Attorney for Plaintiff Leachco, Inc.*